OPINION
{¶ 1} Defendant-appellant Darnell Jones appeals from his conviction and sentence, following a no-contest plea, upon one count of possession of cocaine in an amount exceeding 100 grams, but not exceeding 500 grams. Jones contends that the *Page 2 
trial court erred in overruling his motion to suppress evidence based upon an alleged unlawful search and seizure.
 {¶ 2} The parties' arguments mainly center around the propriety of a police officer's having entered a motel room without probable cause, and without a search warrant, but Jones also argued at trial, and on appeal, that a police officer's search of a shopping bag that he initially carried out of the motel room, but left in the motel room after having gone back inside to bring out another person to whom the police wished to speak, was unlawful. We agree with the State that Jones disclaimed any privacy interest he may otherwise have had in the motel room when he told the police officers that it was not his room, but we agree with Jones that he had not abandoned his privacy interest in the bag, and that the officer's having opened it without probable cause and without a search warrant, was unlawful. All of the evidence against Jones was obtained from the bag, not from elsewhere in the motel room. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} The chain of events germane to this appeal began when Dayton police officers Scott Florea and Officer Olmsted[1] pulled alongside a car being driven by Terry Taylor, a friend of Jones. Taylor made an abrupt right turn into the parking lot of the Royal Motel, without signaling.
 {¶ 4} Florea and Olmsted decided to cite Taylor for the traffic violation. They had *Page 3 
to turn around and come back to the motel. They pulled up behind the car being driven by Taylor, who was still inside, thereby effecting a stop. During the course of establishing Taylor's identity for the purpose of citing him, the officers discovered that Taylor, by his own admission, had no driver's license. Taylor was removed from the car. It was at this moment that Jones entered the scene.
 {¶ 5} Florea testified that:
 {¶ 6} "I saw the Defendant walk out of Room 130 carrying a orange, like a multicolored plastic — I believe it was Aldi shopping bag that was kind of rolled up and he was holding it in his hands.
 {¶ 7} "* * *
 {¶ 8} "He was shocked, a look of shock on his face. It was his eyes opened up real wide like he wasn't expecting us to be sitting there. So, he looked like a deer in the headlights."
 {¶ 9} Florea, who testified that he wanted to see who they could release the car to, asked Jones if Jones had a driver's license. Florea testified that Jones responded: "* * * he said, no, but my girl does and immediately turned around and walked back into the room." "A few seconds later," Jones came out of the room with a female, but Jones no longer had the Aldi shopping bag with him.
 {¶ 10} When Florea checked on the female's license status, he determined that there was an active capias warrant for her arrest. She was then put in the back of the cruiser, along with Taylor.
 {¶ 11} Olmsted then asked Jones if he had any identification. According to Florea, Jones "said that he had a fake ID that he used to get in clubs." Jones was asked to whom *Page 4 
the car belonged. Jones "said it was his girl's car," which Florea ultimately determined to be a reference not to the female who had been in the room with Jones and Taylor, but to Jones's girlfriend.
 {¶ 12} Meanwhile, efforts to verify Jones's identity were less than completely successful. Jones gave the officers his social security number, but it returned a description that included a height of 5' 11". Florea said that Jones was as tall as Florea, and that Florea is 6' 1", so Florea was not satisfied as to Jones's identity.
 {¶ 13} Likewise, efforts to discover who had rented the room were not successful. The female said she didn't know. Jones "said that it was not his room." Florea was not sure whether Taylor was ever asked about the renting of the room.
 {¶ 14} Florea decided to enter the motel room, the door to which had not closed completely, "because I didn't believe who he [Jones] was." Interestingly, in arguing the motion at the close of the hearing, the prosecutor argued for the State that: "When the officers went back into the room, they had a two-fold purpose clearly; one is looking for ID to determine who this individual, and the other was to determine what was inside their Aldi's bag that drew their attention."
 {¶ 15} Florea testified concerning his entry into the motel room as follows:
 {¶ 16} "Q. Okay. What happens next?
 {¶ 17} "A. At that point, we were asking who the room belonged to. We were talking to everybody about who was in possession of the room. The girl stated she did not know whose room it was. The Defendant said that it was not his room. He was coming from that room. And I remember specifically telling Officer Olmsted that he was carrying a bag —
 {¶ 18} "Q. Okay. *Page 5 
 {¶ 19} "A. — when he first came out, and he wasn't carrying a bag when he came out the second time.
 {¶ 20} "MR. BURSEY [representing Jones]: Objection; non-responsive. Move to strike the last statements.
 {¶ 21} "MR. BARRENTINE [representing the State]: The question was what happens next. So, that seems to be pretty responsive.
 {¶ 22} "THE COURT: Yeah. Overruled. Thank you.
 {¶ 23} "THE WITNESS: At that point, the door to the room was not closed completely. We then attempted to obtain any kind of identification for the individual, and we went inside the hotel room to check for it.
 {¶ 24} "Q. Okay. Where did you look for any sort of identification, physically inside?
 {¶ 25} "A. Well, I specifically wanted to — I mean, the bag he was carrying might have his ID in there. So, I was looking for the bag he was carrying when he came out of the room, and I found it. It was stuffed between the mattress and the night stand. I guess if you were facing the bed, it would be on the right side.
 {¶ 26} "Q. Okay. What happens next?
 {¶ 27} "A. I opened the bag and looked inside, and I saw a measuring cup that was full of a white rock-like substance, suspected to be crack cocaine. At that point, I also saw what appeared to be a compressed brick in the bottom of the bag as well. It appeared to be a brick of powdered cocaine. And I saw one or two scales inside the bag as well just from looking from the top down.
 {¶ 28} "Q. Was there any ID in that bag?
 {¶ 29} "A. No." *Page 6 
 {¶ 30} Jones was arrested and charged by indictment with one count of Possession of Cocaine in an amount exceeding 100 grams, but not exceeding 500 grams; one count of Possession of Crack Cocaine in an amount exceeding five grams, but not exceeding ten grams; and three counts of Possession of Criminal Tools. Jones moved to suppress the evidence obtained from the motel room, contending that it was obtained as the result of an unlawful search and seizure. Although Jones's original motion did not refer specifically to the search of the bag as being unlawful, in his post-hearing memorandum in support of his motion to suppress, Jones did argue specifically that he had an expectation of privacy in the bag, as well as in the motel room, generally.
 {¶ 31} At the conclusion of the suppression hearing, the trial court did not immediately rule upon the motion, but requested briefs by the parties. On July 18, 2007, the trial court overruled the motion "[a]s reported and in accordance with the decision stated in open Court on Monday, July 9, 2007," the suppression hearing having taken place on June 11, 2007. Unfortunately, we do not have a transcript of the proceeding on July 9, 2007, in which the trial court apparently expressed its reason for overruling the motion to suppress, so we do not have the benefit of the trial court's reasoning in resolving this appeal.
 {¶ 32} After Jones's motion to suppress was overruled, he entered into a plea bargain wherein he pled no contest to one count of Possession of Cocaine in an amount exceeding 100 grams, but not exceeding 500 grams, and the other counts were dismissed. The trial court entered a judgment of conviction, and Jones was sentenced accordingly. From his conviction and sentence, Jones appeals. *Page 7 
 II {¶ 33} Jones's sole assignment of error is as follows:
 {¶ 34} "WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 35} The primary focus of Jones's argument is that the police lacked probable cause to search the motel room, although he does also argue as a separate issue whether the police could properly search the Aldi shopping bag. The State's appellate brief is addressed exclusively to the motel room, and does not discuss the shopping bag.
 {¶ 36} The State's argument concerning the search of the motel room is that Jones lacks standing to complain about the search, since he abandoned any privacy interest he might otherwise have had in the motel room when he left it, with the door not fully closed, and told the officers it was not his. Taylor testified that Jones provided the money for the room, but that it was registered in Taylor's name because Taylor had identification. Taylor testified that their purpose in renting the room was to have consensual sex with the female, which Taylor testified was not the subject of a commercial transaction.
 {¶ 37} We agree with the State that upon this record, Jones has failed to establish that he had a sufficient privacy interest in the motel room to have standing to complain about the search of the room. But that does not resolve the separate issue of the search of the Aldi shopping bag.
 {¶ 38} Florea clearly believed that Jones had a possessory interest, at least, in the Aldi bag and its contents. He claimed he wanted to look in the bag to see if he could find any identification for Jones.
 {¶ 39} California v. Acevedo (1991), 500 U.S. 565, 579-580,111 S.Ct. 1982, 114 *Page 8 
L.Ed.2d 619, stands for the proposition that even the search of a brown paper bag has Fourth Amendment protection if the bag is opened by the police. Florea never claimed to have been able to see, or otherwise to ascertain the nature of, the contents of the Aldi shopping bag before opening it. The Aldi shopping bag appears to have been an opaque plastic bag. We presume that the opening of the Aldi shopping bag, like the opening of the brown paper bag in California v. Acevedo, supra, while not requiring the use of a lockpick, a hacksaw, or an explosive device, did require some manipulation of the bag to gain access to its contents.
 {¶ 40} In its trial memorandum in opposition to the motion to suppress, the State cited State v. Freeman (1980), 64 Ohio St.2d 291, in which a defendant was deemed to have abandoned luggage he was carrying when the defendant, upon being apprehended by police, dropped the luggage in a public bus station and ran from the police. In that case, the Supreme Court of Ohio cited United States v. Colbert
(5th Cir., 1973), 474 F.2d 174, 176, for the proposition that:
 {¶ 41} "`Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts.United States v. Cowan, 2d Cir. 1968, 396 F. 2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. United States v. Manning, 5th Cir. 1971,440 F. 2d 1105, 1111. * * * . The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Edwards [(5th Cir., 1971),441 F. 2d 749] at 753; cf. Katz v. United States, 1967, *Page 9 389 U.S. 347 * * * .'"
 {¶ 42} Although Jones may have disclaimed any reasonable expectation of privacy in the motel room by denying it was his and by leaving the room with the door not fully closed, the motel room was not a public place of the same character as the bus station in State v. Freeman, supra. Jones clearly had access to the room, and there is nothing in the record to suggest that, when he left the bag behind in the room to escort the female out of the room to respond to the police, he had reason to believe that he would be taken into custody or otherwise prevented from re-entering the room where he had left the bag. Under these circumstances, we conclude that Jones cannot be deemed to have abandoned the bag. Understandably, he did not want it on his person when he went back outside the room where the police were present.
 {¶ 43} Florea never claimed to have had, and the State does not claim that he had, probable cause to believe that the Aldi shopping bag contained contraband or evidence of criminal activity. Therefore, his search of the bag was unlawful, and the evidence obtained as a result should have been suppressed.
 {¶ 44} Jones's sole assignment of error is sustained.
 III {¶ 45} Jones's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. *Page 10 
BROGAN and WOLFF, JJ., concur.
[1] Olmsted, who did not testify, was identified by Florea, who did testify, simply as "Officer Olmsted."
Copies mailed to:
Mathias H. Heck, Jr.
Johnna M. Shia
Lucas W. Wilder
 Hon. A. J. Wagner *Page 1