THE STATE OF OHIO, APPELLANT, *v*. JONES, APPELLEE.

[Cite as *State v. Jones,* 124 Ohio St.3d 1203, 2009-Ohio-6188.]

*Appeal dismissed as improvidently accepted.*

(No. 2009-0364 — Submitted November 3, 2009 — Decided December 3, 2009.)

APPEAL from the Court of Appeals for Montgomery County, No. 22558,

2009-Ohio-61.

_____

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

MOYER, C.J., and PFEIFER, O'DONNELL, and LANZINGER, JJ., concur.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 2} I respectfully dissent from the majority's decision to dismiss this appeal as having been improvidently accepted because I believe that the court of appeals creates an inconsistency in Fourth Amendment jurisprudence by holding that an individual's abandonment of a hotel room does not apply to his privacy rights in the contents left in the hotel room.

{¶ 3} A review of the facts is necessary to understand my reasoning. At 2:45 a.m., Terry Taylor rented room 130 at the Royal Hotel so that he and appellant, Darnell Jones, would have a room to have sex with a woman whom Taylor had picked up. Jones and the woman occupied the room while Taylor left for several hours to check on his mother.

{¶ 4} Upon Taylor's return to the hotel at approximately 11:00 a.m., Officers Florea and Olmsted of the Dayton police observed Taylor's vehicle turning into the hotel parking lot without signaling. Taylor parked the vehicle in

front of room 130, where the officers executed a traffic stop. Because Taylor did not have a valid driver's license, Officer Olmsted asked Taylor to step out of his car and into the officers' cruiser. Officer Florea then spotted Jones exiting room 130 with a bag.

{¶ 5} Believing that Jones might be approaching the car, Officer Florea asked Jones whether he had a driver's license. Officer Florea testified that Jones denied having a valid ID, but claimed that "his girl" did. Officer Florea testified that Jones then reentered the room and after a brief time reemerged with a female. He was no longer carrying the bag.

{¶ 6} The officers ascertained from Jones that the car belonged to "his girl." At the time, the officers mistakenly believed that "his girl" referred to the female who had emerged from the room with Jones.[1] Seeking to find a licensed driver to take Taylor's vehicle, Officer Florea asked the female for her ID, and upon checking it, he determined that there was a warrant out for her arrest. Consequently, Officer Florea also placed her in the back of the police cruiser.

{¶ 7} Officer Florea testified that he then asked Jones whether he had a driver's license. Officer Florea testified that Jones admitted that he had only a fake ID. Officer Florea next asked Jones for his Social Security number. However, Officer Florea found that the description of the individual with that Social Security number did not match Jones's physical description.

{¶ 8} Officer Florea then asked who had rented the room. Officer Florea testified that the female stated that she did not know who had rented the room. He also testified that Jones *denied* that it was *his* room.

{¶ 9} Officer Florea testified that he and Officer Olmsted found that the door to room 130 was open, so they decided to enter, believing that Jones's ID might be in the bag that he left in the room. The officers discovered that the bag

---

1. The officers later learned that Jones's "girl" was Ashley Brooks, who was not at the hotel.

contained what proved to be cocaine and crack cocaine. After Jones's motion to suppress the evidence was denied, Jones pleaded no contest and was convicted of drug charges.

{¶ 10} In reversing the trial court's denial of Jones's motion to suppress, the court of appeals held: "Although Jones may have disclaimed any reasonable expectation of privacy in the motel room by denying it was his and by leaving the room with the door not fully closed, the motel room was not a public place of the same character as the bus station in *State v. Freeman* [(1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044]. Jones clearly had access to the room, and there is nothing in the record to suggest that, when he left the bag behind in the room to escort the female out of the room to respond to the police, he had reason to believe that he would be taken into custody or otherwise prevented from re-entering the room where he had left the bag. Under these circumstances, we conclude that Jones cannot be deemed to have abandoned the bag. Understandably, he did not want it on his person when he went back outside the room where the police were present." *State v. Jones*, Montgomery App. No. 22558, 2009-Ohio-61, ¶ 42.

{¶ 11} Thus, the court of appeals clearly held that Jones had abandoned his right to claim an expectation of privacy in the hotel room. The question is whether Jones's abandonment of his expectation of privacy regarding the room also applied to the bag within the room.

{¶ 12} "The Fourth Amendment protects persons from 'unreasonable searches and seizures' by the government. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 364, 588 N.E.2d 116." *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 8. However, "[i]n order to have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized.

See *Alderman v. United States* (1969), 394 U.S. 165, 171-172, 89 S.Ct. 961, 22 L.Ed.2d 176." Id.

{¶ 13} The expectation of privacy under the Fourth Amendment extends to hotel occupants. *Stoner v. California* (1964), 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856. An expectation of privacy applies to an occupant's belongings as well. See *Hoffa v. United States* (1966), 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374. However, a person forfeits that interest when a person abandons his or her hotel room. See *Abel v. United States* (1960), 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668. Thus, disclaiming an expectation of privacy in the hotel room also necessarily operates to disclaim any expectation of privacy as to items in that abandoned room.

{¶ 14} " 'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan*, 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning*, 5th Cir. 1971, 440 F.2d 1105, 1111.' " *Freeman*, 64 Ohio St.2d at 297, 18 O.O.3d 472, 414 N.E.2d 1044, quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176.

{¶ 15} However, an individual's express abandonment can alone be sufficient to extinguish an expectation of privacy in a property interest. *State v. Ross* (Tenn.2001), 49 S.W.3d 833, 841-842. In *Ross*, officers knocked on the door to room 121, trying to recover stolen checks. Id. at 837. The officers asked the occupants of the room, including the defendant, to step into the hall. Defendant had the key to room 132 in his possession. When questioned by the officers, the defendant "denied that the key was his." Id. The police then searched room 132 and found 54 grams of crack cocaine.

**{¶ 16}** The trial court denied the defendant's motion to suppress, finding that Ross had abandoned his expectation of privacy in the room when he denied that he had rented it. A jury convicted defendant on drug charges.

**{¶ 17}** The Supreme Court of Tennessee affirmed, stating that "a defendant's disclaimer is more than just another factor to consider [in determining abandonment], and 'when one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure.' " *Ross,* 49 S.W.3d at 841, quoting *Bowman v. State* (1962), 211 Tenn. 38, 41, 362 S.W.2d 255. The court added, "[A] defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession." Id. at 842. "By disclaiming ownership of the key, the appellant effectively gave 'the authorities the green light to proceed insofar as his own Fourth Amendment rights [were] concerned' * * *." Id., 842, quoting *People v. Allen* (1993), 17 Cal.App.4th 1214, 1222, 21 Cal.Rptr. 2d 668.

**{¶ 18}** While *Ross* is not squarely on all fours with the instant case, it stands for the proposition that a defendant's express disclaimer of "ownership" of a hotel room alone is sufficient to extinguish his or her expectation of privacy in that room and its contents. Relying on the rule of abandonment and the rationale in *Ross*, I would hold that the court of appeals erred in concluding that Jones's intent when he reentered the room controls our disposition in determining whether the bag was subject to Fourth Amendment protections. Irrespective of his intent at that time, Jones later left the bag in the room with the door open and expressly disclaimed ownership of the room. Consistent with *Ross*, Jones's express abandonment alone was sufficient to extinguish his expectation of privacy in the hotel room and its contents, including the bag.

**{¶ 19}** Finally, upon questioning Jones, the officers discovered that he had only a fake ID in his immediate possession and had produced a Social Security number that was not his. Therefore, even though it is a moot point because Jones lacks standing to raise a Fourth Amendment challenge, it was reasonable for the officers to believe that they might find something in the bag that would identify Jones.

**{¶ 20}** Consequently, I would consider the state's appeal and hold that Jones's express disclaimer of any expectation of privacy in the hotel room operated to nullify any expectation of privacy that he had in the bag. Therefore, because Jones had no standing to challenge the officers' seizure of the bag, I would reverse the judgment of the court of appeals. Accordingly, I respectfully dissent.

CUPP, J., concurs in the foregoing opinion.

_____

**O'CONNOR, J., dissenting.**

**{¶ 21}** I dissent from the court's decision to dismiss this appeal as having been improvidently accepted. Because it is uncontroverted that appellee, Darnell Jones, did not have a reasonable expectation of privacy in the room searched and because he had abandoned the property before the search took place, I would reverse the decision of the court of appeals and reinstate the trial court's decision denying the motion to suppress.

**Factual Background**

**{¶ 22}** On January 18, 2007, two city of Dayton police officers on routine patrol observed a green Mercury Sable make an abrupt turn into a motel parking lot without signaling. The officers followed the vehicle into the parking lot and determined that the driver, Terry Taylor, did not have a valid driver's license.

**{¶ 23}** While the officers were in the process of arresting the driver for operating the vehicle without a license, appellee, Darnell Jones, emerged from the

6

motel room in front of the parked car. He was carrying a grocery bag and started to walk toward the vehicle. One of the officers asked Jones whether he had a valid driver's license. Jones stated that he did not, but told the officers that his "girl" did. Jones immediately returned to the motel room, and moments later, he reappeared with a female. This time, Jones was no longer carrying the grocery bag. Jones informed the police that his girlfriend, who was not present, owned the vehicle.

{¶ 24} Trying to determine to whom they could release the vehicle, the officers obtained the woman's identification. It was discovered that the woman had an outstanding warrant, which resulted in her arrest. The officers asked Jones whether he had any identification, and he told the police that he had only a fake ID that he used to get into clubs. Jones gave the officers his Social Security number, but when the officers checked that number, police records indicated that it belonged to someone who did not match Jones's description. The officers then attempted to obtain identification for Jones.

{¶ 25} The officers asked Jones to whom the motel room belonged, and Jones denied that it was his room. The door to the motel room was already open, so the officers entered the room to look for identification for Jones. Having seen Jones carrying a grocery bag when he initially left the motel room, the officers thought it might contain some information that would assist in ascertaining Jones's identity. They looked for the bag inside the room and found it stuffed between a mattress and the nightstand. Inside the bag, the officers found a measuring cup full of a rock-like substance that they suspected to be crack cocaine, a compressed brick that appeared to be powdered cocaine, and scales.

{¶ 26} Jones was arrested and charged by indictment with one count of possession of cocaine in an amount exceeding 100 grams, but not exceeding 500 grams; one count of possession of crack cocaine in an amount exceeding five grams, but not exceeding ten grams; and three counts of possession of criminal

tools. Jones moved to suppress the evidence, arguing that its discovery was the result of an unlawful search and seizure. The trial court denied Jones's motion to suppress, holding that he did not have an expectation of privacy in the motel room. The trial court did not consider whether Jones had a privacy interest in the bag. Following the trial court's denial of his motion to suppress, Jones pleaded no contest to one count of possession of cocaine.

{¶ 27} On appeal, the Second District Court of Appeals agreed that Jones had disclaimed any privacy interest in the motel room. *State v. Jones*, Montgomery App. No. 22558, 2009-Ohio-61, ¶ 2. Nonetheless, the court of appeals reversed the trial court's decision denying the motion to suppress, holding that Jones had not abandoned his privacy interest in the grocery bag and that the officers' search of the bag without probable cause was unlawful. Id.

{¶ 28} We granted the state's discretionary appeal to address the important constitutional issues implicated in this appeal. *State v. Jones*, 121 Ohio St. 3d 1499, 2009-Ohio-2511, 907 N.E.2d 323.

### Jones Did Not Have a Privacy Interest in the Grocery Bag

{¶ 29} The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." Article I, Section 14 of the Ohio Constitution is virtually identical.

{¶ 30} However, an individual cannot challenge a warrantless search or seizure unless he has a legitimate expectation of privacy in the property or place that is searched. *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 14. Any subjective expectation of privacy must also be objectively reasonable. Id. at ¶ 20. Furthermore, even if an individual had a privacy interest at one time, "[i]t is rudimentary that one does not have standing to object to a search and seizure of property that he has voluntarily abandoned."

*State v. Freeman* (1980), 64 Ohio St.2d 291, 296, 18 O.O.3d 472, 414 N.E.2d 1044.

**{¶ 31}** Because Jones challenges the propriety of the officers' search of the grocery bag, he bears the burden of establishing that he had an expectation of privacy in the bag and that society is prepared to recognize the expectation as objectively reasonable. *State v. Williams* (1995), 73 Ohio St.3d 153, 166, 652 N.E.2d 721. Only if Jones establishes a legitimate expectation of privacy in the grocery bag does the burden shift to the state to show that he abandoned that privacy interest. *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, 914 N.E.2d 1071, ¶ 39-41.

**{¶ 32}** Contrary to the court of appeals' holding, I would hold that Jones (a) failed to establish that he had any possessory or privacy interest in the grocery bag and (b) abandoned any privacy interest when he left the bag in a motel room and then disclaimed any privacy interest in the room.

*A*

**{¶ 33}** The court of appeals based its finding of a privacy interest on the fact that the officers initially saw Jones exit the motel room carrying the bag. *Jones*, 2009-Ohio-61, ¶ 38. From that, the court drew its sweeping conclusion that based on their desire to search the grocery bag for identification for Jones, the officers "clearly believed that Jones had a possessory interest, at least, in the * * * bag and its contents." Id. However, Officer Florea did not testify that he believed that the bag belonged to Jones — only that he thought that " 'the bag [Jones] was carrying might have his ID in there.' " Id. at ¶ 25.

**{¶ 34}** The fact that Jones possessed the bag at one moment in time, in and of itself, does not establish that he had a possessory interest or a legitimate expectation of privacy in the bag. Jones did not assert a possessory interest in the grocery bag at the time of the search, he did not have possession of the bag at the time of the search, and he did not instruct the police not to search the bag.

Without a property or possessory interest in the grocery bag, Jones did not have a legitimate expectation of privacy and thus does not have a cognizable challenge to the officers' search. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 165, 749 N.E.2d 226, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387. Because Jones had no standing to challenge the search, the trial court properly denied his motion to suppress. I would hold that the court of appeals erred in reversing that determination. And as set forth below, even assuming arguendo that Jones established a possessory interest in the bag at one point, his abandonment of that property in a room he disavowed control over is fatal to his constitutional claims.

*B*

{¶ 35} It is undisputed that Jones abandoned any privacy interest he might otherwise have had in the motel room when he left it, with the door open, and told the officers that it was not his room. But Jones argues, and the court of appeals agreed, that although he disclaimed any expectation of privacy in the motel room, he did not disclaim his expectation of privacy in the bag. *Jones*, 2009-Ohio-61, ¶ 42. The court of appeals reasoned that Jones had access to the room, and there is "nothing in the record to suggest that, when he left the bag behind in the room to to escort the female out of the room to respond to the police, he had reason to believe that he would be taken into custody or otherwise prevented from re-entering the room where he had left the bag. Under these circumstances, we conclude that Jones cannot be deemed to have abandoned the bag." Id. I do not agree that after Jones disavowed any privacy interest that he had in the motel room, he retained a privacy interest in property left there.

{¶ 36} Jones argues that he did not abandon the bag because he never "denied ownership; threw it away; deposited it into a trash container; [or] dropped it on the sidewalk and kick[ed] it out of view." However, " '[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced

by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it *at the time of the search*.' " (Emphasis added.) *Freeman*, 64 Ohio St.2d at 297, 18 O.O.3d 472, 414 N.E.2d 1044, quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176. "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts*."* Id.

{¶ 37} Jones did not need to expressly deny ownership of the grocery bag for the court to find that he relinquished any possessory interest. Rather, his intent to abandon the property is clear from the facts. Jones relinquished control over the grocery bag by leaving it in a motel room over which he had disclaimed any privacy interest.

{¶ 38} Jones argues that property is deemed abandoned only when it is left in a public place, such as a trash container or bus station. He contends that a motel room is not a "public place." In support of his argument, Jones relies on a number of cases in which property was abandoned in "public places." See, e.g., *Abel v. United States* (1960), 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (the defendant abandoned property in his hotel-room trash can when he checked out of the hotel); *Freeman*, 64 Ohio St.2d at 292, 18 O.O.3d 472, 414 N.E.2d 1044 (the defendant abandoned luggage when he dropped it in a public bus station and ran from police); *State v. Hill* (1998), 127 Ohio App.3d 265, 267-268, 712 N.E.2d 791 (the defendant abandoned crack cocaine that he threw to the ground while being chased by police officers); *United States v. Flynn* (C.A.10, 2002), 309 F.3d 736, 738 (the defendant abandoned a bag of drugs that he threw from a car before reaching a police checkpoint); *United States v. Mustone* (C.A.1, 1972), 469 F.2d 970, 972 (the defendant abandoned two trash bags that he had placed on the sidewalk for collection). Indeed, the court of appeals distinguished *Freeman* because Jones had abandoned the property in a motel room rather than in a

"public place of the same character as the bus station." *Jones*, 2009-Ohio-61, ¶ 42.

{¶ 39} The fact that Jones left the grocery bag in a motel room, rather than in a bus stop, trash can, or any other public location, is not dispositive. Rather, the critical inquiry is whether a defendant has a reasonable expectation of privacy in property left in a given location. Here, Jones cannot be said to have had a reasonable expectation of privacy in property he left in a location (the motel room) that he expressly denied was his. By its nature, a motel room is subject to use by the public. But regardless of whether the motel room is a public place, by leaving the grocery bag in a location in which he maintained no legitimate expectation of privacy, Jones abandoned any expectation of privacy that he had in the bag. *Freeman,* 64 Ohio St.2d at 297, 18 O.O.3d 472, 414 N.E.2d 1044.

{¶ 40} Finally, Jones argues that he cannot be considered to have abandoned the bag because nothing in the record suggests that he would be prevented from reentering the motel room to retrieve the bag after the police officers left. Whether Jones intended to retrieve the grocery bag after he was questioned by the police officers is relevant to whether he intended to relinquish control over the bag, thereby abandoning it, or whether he merely sought to protect the bag from inspection by the officers. *Smith v. Ohio* (1990), 494 U.S. 541, 543-544, 110 S.Ct. 1288, 108 L.Ed.2d 464 (holding that an individual who attempts to protect his private property from inspection, but does not intend to relinquish control over it, does not abandon the property). However, the record is wholly devoid of evidence suggesting that Jones had the authority to return to the room after his encounter with the police or that he actually intended to return to the motel room to recover the bag. Because Jones provides nothing but speculation and conjecture to support his claim, his claim fails.

**Conclusion**

**{¶ 41}** Because I would hold that Jones did not establish a legitimate expectation of privacy in the grocery bag and that he abandoned any expectation of privacy that he had, I would reverse the decision of the court of appeals and would reinstate the trial court's decision denying Jones's motion to suppress. Therefore, I respectfully dissent.

CUPP, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia and Michele D. Phipps, Assistant Prosecuting Attorneys, for appellant.

Lucas W. Wilder, for appellee.

Timothy Young, Ohio Public Defender, and Claire R. Cahoon, Assistant Public Defender, urging affirmance for amicus curiae, Ohio Public Defender.

_____