[Cite as *State v. Buenrostro*, 2019-Ohio-694.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff – Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. CT2018-0034 |
| JOSE BARRAGAN BUENROSTRO | |
| Defendant – Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2017-0273 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 25, 2019 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| D. MICHAEL HADDOX<br>27 North Fifth Street, Suite 201<br>P.O. Box 189<br>Zanesville, Ohio  43702-0189 | ROBERT E. CALESARIC<br>35 South Park Place, Suite 150<br>Newark, Ohio  43055 |

*Hoffman, J.*

{¶1}   Defendant-appellant Jose Barragan Buenrostro appeals his convictions and sentence entered by the Muskingum County Court of Common Pleas, on one count of possession of drugs, one count of trafficking in drugs, and one count of fabrication of a vehicle with a hidden compartment, after the trial court found him guilty following its acceptance of his no contest plea.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On August 23, 2017, the Muskingum County Grand Jury indicted Appellant on one count of possession of drugs, in violation of R.C. 2925.11, with major drug offender and forfeiture specifications, a felony of the first degree; one count of trafficking in drugs, in violation of R.C. 2923.03, with major drug offender and forfeiture specifications, a felony of the first degree; and one count of fabrication of a vehicle with hidden compartment, in violation of R.C. 2923.241, a felony of the second degree.  Appellant entered a plea of not guilty to the charges at his arraignment on August 23, 2017.

{¶3}   Appellant and his co-defendants, Rember Moscoso and Hector Gomez, filed motions to suppress.  Following a hearing on November 10, 2017, the trial court denied Moscoso and Gomez's motions to suppress.

{¶4}   The trial court conducted a hearing on Appellant's motion to suppress on April 5, 2018.  The following evidence was adduced at the hearing:

{¶5}   On July 11, 2017, Detective Adam Hoskinson with the Central Ohio Drug Enforcement Task Force (CODE) testified he was in a marked cruiser working and viewing westbound traffic on Interstate 70 in Licking County when he observed a silver Kia Sportage with Illinois license plates following too close to a tanker truck in front of it. Det. Hoskinson ran the plates and learned the Kia Sportage was a rental vehicle.  The

detective noted the barcode sticker normally found on rental vehicles was missing from the rear window. Det. Hoskinson explained drug traffickers will remove the barcode stickers so the rented vehicle "blends" with traffic. As he continued to follow the vehicle, the driver, later identified as Appellant, changed lanes without signaling for at least 100 feet before doing so. Detective Hoskinson activated his overhead lights and initiated a traffic stop of the vehicle.

{¶6} Det. Hoskinson approached the passenger's side of the vehicle and made contact with Appellant. He immediately detected the odor of raw marijuana emanating from the interior of the vehicle. He observed marijuana flakes throughout the vehicle as well as on Appellant's lap. Appellant advised Det. Hoskinson he did not have a driver's license, but provided the detective with a Mexican passport. Det. Hoskinson asked Appellant for the rental car agreement, which revealed the Kia had been rented from Enterprise Rent-A-Car in the name of Amber Connor.

{¶7} Appellant consented to a search of his person and the vehicle. Det. Hoskinson located three hotel key cards from a Quality Inn, a vape pen, and approximately $500.00, on Appellant's person. In the center console of the vehicle, Det. Hoskinson discovered a large plastic bag containing two or three ounces of marijuana. Thereafter, the detective advised Appellant of his Miranda rights. Det. Hoskinson continued his search of the vehicle. In the rear cargo area, Det. Hoskinson found a spare tire sitting on the carpeted area. He noticed the lug pattern of the spare tire did not match the lug pattern on the tires on the Kia. Det. Hoskinson examined the spare tire and found a three sided rectangular cut in the sidewall which created a flap. Det. Hoskinson explained tires are commonly used to transport narcotics or contraband. Although the

tire compartment was empty, a residue found therein was subsequently determined to be methamphetamine.  On the front passenger seat, the detective located a recent receipt from the Zanesville, Ohio Quality Inn in the name of Rember Moscoso.  Det. Hoskinson also found a traffic violation citation from Oklahoma, in the name of Hector Gomez. Appellant confirmed he was staying at the Quality Inn.

{¶8}    Det. Hoskinson placed Appellant under arrest through a Homeland Security holder as well as the hidden compartment violation.  The detective contacted Det. Mike Patrick of the Zanesville Police Department, who is also assigned to CODE, to conduct a follow up at the Quality Inn relative to Moscoso and Gomez.  Det. Patrick along with Det. Todd Kanavel of the Muskingum County Sheriff's Office, also an agent with CODE, responded to the Quality Inn and spoke to the hotel manager.  The detectives learned Moscoso checked into room 324 on July 8, 2017, but transferred to room 210 that morning, to save money.

{¶9}    Detectives Kanavel and Patrick proceeded to room 210 to conduct a knock and talk.  Moscoso answered the door.  After identifying himself and Det. Patrick, Det. Kanavel asked Moscoso if he had time to speak with them.  After agreeing, Moscoso invited them into the room and asked if the matter had to do with Appellant. The detectives answered it did.   Moscoso stated the marijuana in the car was all they had.  Moscoso explained they worked as endorsers for mixed martial arts fighters.  When Det. Kanavel asked Moscoso and Gomez if there were any drugs or weapons in the room, they denied the presence of either.  When Det. Kanavel asked if they could search the hotel room, Moscoso and Gomez both gave their consent.

{¶10}  In the bag Moscoso indicated belonged to him, Det. Kanavel found a plastic

shopping bag containing approximately $15,000 in U.S. currency. Det. Kanavel contacted CODE agent Det. George Romano with the Newark Police Department, who was investigating Appellant. Det. Romano advised he was on route to the Quality Inn to speak with Moscoso and Gomez. Det. Kanavel informed Moscoso and Gomez Det. Romano wanted to speak with them and Moscoso and Gomez agreed to wait for him. The detectives remained in the hotel room without objection from Moscoso and Gomez for approximately one half hour while they waited for Det. Romano to arrive from Newark.

{¶11} When Det. Romano arrived, he spoke with Moscoso and Gomez individually. The two men gave conflicting stories about how and when they traveled to Ohio. Det. Romano spoke with the hotel manager, who informed him the men had paid in cash for the room and their $250 deposit would be returned if the room passed inspection. The detectives spoke with the Licking County Prosecutor, who indicated Moscoso and Gomez should be placed under arrest and be transported to Licking County for further investigation. Det. Kanaval advised Moscoso and Gomez they were under arrest, and asked if they wanted the detectives to pack up their possessions so the $250.00 room deposit would be refunded. The two men agreed.

{¶12} As the detectives gathered the men's belongings, Det. Romano discovered a black duffle bag full of methamphetamine under one of the beds. The methamphetamine was packaged in 13 gallon-size zip lock bags. Det. Romano also found a styrofoam coffee cup behind a microwave, which contained what appeared to be methamphetamine.

{¶13} Via Judgment Entry filed April 16, 2018, the trial court denied Appellant's motion to suppress. Appellant appeared before the trial court on April 17, 2018, withdrew

his former pleas of not guilty, and entered pleas of no contest to the possession of drugs and trafficking in drugs counts. The charge of fabrication of a vehicle with a hidden compartment was tried to the court on stipulated facts. The trial court found Appellant guilty of all three charges and sentenced him to an aggregate term of imprisonment of eleven years.

{¶14} It is from his convictions and sentence Appellant appeals, raising as his sole assignment of error:

TRIAL COURT COMMITTED HARMFUL ERROR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS PURSUANT TO APPELLANT'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE.

*Standard of Review*

{¶15} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's

conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

{¶16} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra*. As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶17} Appellant challenges the trial court's denial of his motion to suppress on two grounds. First, Appellant argues Det. Hoskinson did not have reasonable suspicion to stop Appellant's vehicle. Next, Appellant maintains the detectives did not have consent to conduct the search of the hotel room and his black bag. We shall address each in turn.

A. The Traffic Stop

{¶18} Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, an occupant is or has been engaged in criminal activity. *State v. Logan,* 5th Dist. Richland No. 07-CA-56, 2008-Ohio-2969, ¶ 15, quoting *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618, 611 N.E.2d 972. Reasonable suspicion constitutes something less than probable cause. *State v. Carlson* (1995), 102 Ohio App.3d 585, 590, 657 N.E.2d 591. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091. Accordingly, "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4539, ¶ 8.

{¶19} Appellant submits, once Det. Hoskinson determined Appellant had not violated any law, the detective had no further authority to detain him. In support of his position, Appellant relies on the Third District Court of Appeals decision in *State v. Cromes*, 3rd Dist. No. 17-06-07, 2006-Ohio-6924. The *Cromes* Court determined an

officer was justified in initiating a traffic stop under R.C. 4503.21 based upon his inability to read the defendant's rear license plate while following the vehicle. However, the Court held, after the officer found the plate readable from a distance of approximately ten feet and could see the license plate had not been intentionally obscured, the officer no longer maintained a reasonable suspicion the defendant violated R.C. 4503.21, and was not justified in further detaining the defendant and demanding the production of his driver's license.

**{¶20}** We find *Cromes* to be factually distinguishable from the instant action. Here, Det. Hoskinson testified he initiated a traffic stop after he observed two violations, to wit: following too closely and failure to signal for more than 100 feet prior to changing lanes. Assuming, arguendo, as Appellant argues, Det. Hoskinson conceded during his cross examination Appellant used his signal for more than 100 feet prior to changing lanes, such does not establish the detective lacked probable cause at the time of the stop. See, e.g. *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, at ¶ 14. ("[T]he existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver]'s conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Id.* at ¶ 16). While, in hindsight, the video of the incident showed the lane change signal charge was invalid, such does not automatically mean Det. Hoskinson's visual estimate of distance at the time did not provide a reasonable basis for the traffic stop.

**{¶21}** Appellant further asserts, "there was no established standard and there was not even any rule of thumb presented at the hearing as to why or how [Det. Hoskinson]

established that the Kia was following too closely." Brief of Appellant at 12. Appellant adds the detective "just subjectively thought the vehicle was too [sic] following too close and he did not take in all the circumstances." *Id.* At the suppression hearing, Det. Hoskinson testified a reasonable and prudent driver would not follow the tanker truck as closely as Appellant was following the tanker truck. Tr. of Suppression Hearing at 49. This provides a sufficient basis for the traffic stop independent of the lane change signal charge.

**{¶22}** Appellant contends Det. Hoskinson merely wanted to find a basis to stop Appellant and "he didn't care about any traffic violation other than to find some way to stop it." Brief of Appellant at 11. A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable, articulable suspicion a traffic or equipment violation has occurred or is occurring. *City of Dayton v. Erickson,* 76 Ohio St.3d 3, 11 (1996). It is irrelevant the officer may have had other subjective motives for stopping the vehicle. *Id.*

**{¶23}** We find Det. Hoskinson had a reasonable, articulable suspicion two traffic violations had occurred; therefore, the stop was valid. The trial court did not err in denying Appellant's motion to suppress based upon the validity of the traffic stop.

B. Search of Hotel Room and Black Bag

**{¶24}** Appellant submits he had a reasonable expectation of privacy in the hotel room and his luggage, never abandoned that right, and never consented to the search. Appellant adds Moscoso and Gomez did not consent to the second search which occurred after they were placed under arrest.

**{¶25}** The Fourth Amendment to the United States Constitution protects

individuals against unreasonable searches and seizures. Without a search warrant, a search is per se unreasonable unless it falls under a few established exceptions. *State v. Swetnam,* 5th Dist. Licking No. 14–CA–57, 2015–Ohio–1003, ¶ 14, citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The expectation of privacy under the Fourth Amendment extends to hotel occupants. *State v. Jones,* 124 Ohio St.3d 1203, 2009–Ohio–6188, ¶ 13, citing *Stoner v. California* (1964), 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856. An expectation of privacy applies to an occupant's belongings as well. *Id.*, citing *Hoffa v. United States* (1966), 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374.

{¶26} Once the defendant shows the search was warrantless, the burden shifts to the state to show it was permissible under one of the exceptions. *Swetman* at 14 *(Citation omitted).* Consent is one exception to the warrant requirement. *Id.* If an individual voluntarily consents to a search, then no Fourth Amendment violation occurs. *Id.*, citing *Schneckloth v. Bustamante,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "Consent to search can be 'obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises'." *State v. Portman,* 2d Dist. No.2013–CA–68, 2014–Ohio–4343, ¶ 11, quoting *Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990).  Police officers "may conduct a search without a warrant so long as a third party who possesses common authority over the property voluntarily consents to the search." *State v. Reynolds,* 9th Dist. No. 19062 (Oct. 27, 1999), citing *United States v. Matlock,* 415 U.S. 164 (1974). It has been noted, "'[c]ommon authority' exists when two or more persons have joint access or control over the property, each has the right to consent to permit inspection, and each has assumed the risk that

any one of them might so consent." *Reynolds,* quoting *Matlock* at 172.

**{¶27}** We find the consent to search the hotel room was given by Moscoso and Gomez. As third parties, Moscoso and Gomez had joint control over the hotel room with Appellant; therefore, possessed common authority over the property and could voluntarily consent to the search. However, the question remains whether Moscoso and Gomez ever revoked their initial consent, rendering unreasonable the search which resulted in the discovery of the black duffle bag filled with methamphetamine.

**{¶28}** After conducting the search, Det. Kanavel informed Moscoso and Gomez Det. Romano wished to speak with them. He asked the men if he and Det. Patrick could remain in the room while they waited for Det. Romano to arrive. Neither Moscoso nor Gomez objected. When Det. Romano arrived, he individually interviewed Moscoso and Gomez. While one was speaking with Det. Romano and Patrick, the other remained in the hotel room with the other detectives. Moscoso and Gomez were advised they were being placed under arrest. Det. Kanavel asked the two men if they wanted the detectives to collect their belongings so they would not lose their $250.00 room deposit. The men agreed. While the detectives were gathering the men's personal belongings, Det. Romano discovered a black duffle bag containing a significant amount of methamphetamine under one of the beds. Det. Romano also found a styrofoam coffee cup containing what appeared to be methamphetamine.

**{¶29}** Appellant argues Moscoso and Gomez did not consent to the second search of the hotel room, which he explains occurred after they were placed under arrest. We disagree. We find the detectives were engaged in one continuous encounter. One or more detectives remained in the hotel room with either Moscoso or Gomez, or both

men.  At no time did either Moscoso or Gomez revoke their consent or limit the scope of the search.   The original consent did not expire until the detectives relinquished control by leaving the hotel premises.  Accordingly, we find the trial court did not err in denying Appellant's motion to suppress based upon the consent to search the hotel room and its contents.

{¶30}  Appellant's sole assignment of error is overruled.

{¶31}  The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Hoffman, J.
Gwin, J.  and
Wise, J. concur