[Cite as *State v. Gomez*, 2019-Ohio-481.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2018-0025 |
| HECTOR GOMEZ | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:     Criminal appeal from the Muskingum
County Court of Common Pleas, Case No.
CR2017-0272

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      February 11, 2019


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

GERALD ANDERSON II                   ELIZABETH GABA
Assistant Prosecuting Attorney       1231 East Broad Street
27 North 5th Street, Ste. 201        Columbus, OH 43205
Zanesville, OH 43701

*Gwin, P.J.*

{¶1} Defendant-appellant Hector Gomez ["Gomez"] appeals his conviction and sentence from the Muskingum County Court of Common Pleas on drug-related charges.

*Facts and Procedural History*

{¶2} On April 9, 2017, the Muskingum County Grand Jury indicted Gomez on one count of possession of drugs (methamphetamines) in violation of R.C. 2925.11(A), a felony of the first degree. The count was accompanied by forfeiture and major drug offender specifications. Gomez also was indicted on one count of trafficking in drugs (methamphetamines) in violation of R.C. 2925.03(A)(2), a felony of the first degree, with major drug offender and forfeiture specifications and one count of fabrication of a vehicle with a hidden compartment in violation of R.C. 2923.241(C), a felony of the second degree.

{¶3} On October 11, 2017, Gomez filed a Motion to Suppress Evidence. A suppression hearing was held on November 10, 2017.

{¶4} At the hearing, Detective Adam Hoskinson of the Licking County Sheriff's Office testified that he was assigned to the Central Ohio Drug Enforcement ("CODE") Task Force. He testified that on July 11, 2017, he was in a marked cruiser when he noticed a vehicle following too close to a gasoline tanker truck in front of it. He testified that the vehicle later changed lanes but did not "signal for at least 100 feet" before it did so. T., November 10, 2017 at 15. Detective Hoskinson testified that he initiated a traffic stop of the vehicle, which was a silver Kia Sportage with Illinois plates that had been rented from Enterprise Rent-A-Car in the name of Amber Connor.

{¶5}   After he pulled the vehicle over and approached the passenger's side, Detective Hoskinson immediately smelled an "odor, abundant amount of raw marijuana coming from inside the vehicle" T., Nov. 10, 2017 at 16-17.  He testified that he could observe marijuana flakes throughout the center console area of the vehicle.  The driver of the vehicle, Jose DeJesus Barragan Buenrostro, consented to a search of the same and of his person and had flakes of marijuana on his shirt and pants[1].  The Detective located three hotel key cards to the Quality Inn in Zanesville, Ohio on Buenrostro's person.  A search of the vehicle yielded a Quality Inn hotel receipt for room 324 in the hotel, which was in Zanesville, Ohio.  The name on the receipt was Rember Moscoso[2]. A large bag with two or three ounces of suspected marijuana was found in the center console.  When he opened up the rear cargo area of the Kia, Detective Hoskinson located a spare tire sitting on the carpeted area and noticed that the lug pattern on the spare tire was for four lugs when the tires on the vehicle had five lugs.  Based upon his training and experience he was concerned that there could be a hidden compartment in the tire. Detective Hoskinson examined the tire and saw that there was a rectangular cut with a flap sticking up on the tire.  He testified that this was a common way of transporting illegal narcotics or contraband.  There was nothing inside the compartment of the tire.  The tire was sent to the crime lab for further analysis.  The trial court sustained defense counsel's objection to Detective Hoskinson's testimony about the results of the laboratory analysis of the tire.  T., Nov. 10, 2017 at 47.

---

[1] Buenrostro has filed a separate appeal.  *State v. Buenrostro,* 5th Dist. Muskingum No. CT2018-0043, 2019-Ohio-__.

[2] Moscoso filed a separate appeal.  *See, State v. Moscoso,* 5th Dist. Muskingum No. CT2018-0012, 2018-Ohio-2877, *appeal not accepted* 154 Ohio St.3d 1430, 2018-Ohio-4670, 111 N.E.3d 1192(Table).

**{¶6}**   Also in the vehicle, a traffic citation from Oklahoma City that had been issued in the name of Gomez was located.   Buenrostro, who did not have a driver's license, was arrested on an outstanding ICE holder and the hidden compartment violation.

**{¶7}**   Detective Hoskinson then contacted Detective Mike Patrick with the Zanesville Police Department who is also a Detective with the Zanesville/Muskingum County Drug Unit to follow up with the hotel because he thought that there might be drugs in the hotel room.

**{¶8}**   Detective Todd Kanavel of the Muskingum County Sheriff's Office who is also an agent with CODE, testified that he followed up with the hotel at the direction of Detective Patrick.   He testified that the hotel manager told him that Gomez and Moscoso had checked into room 324 on July 8, 2017 but had transferred to room 210 on July 11, 2017 to save money.   Detective Kanavel and Detective Patrick then went to room 210 at approximately 3:30 p.m. on July 11, 2017 and knocked on the door.   They could hear at least one male voice inside the room talking.   Moscoso opened the door.   Detective Kanavel identified himself and Detective Patrick and asked to talk to him.   Moscoso, according to Detective Patrick, invited them into the room.  When the Detectives entered the room, they saw Gomez also was in the room laying on the bed.   Both Gomez and Moscoso provided California IDs.   Moscoso asked if this had anything to with their friend Jose [Buenrostro].   The Detectives indicted that it did.   Moscoso said that he knew Buenrostro had "a little bit of marijuana"; however, everybody has it because it is legal in California.   T., Nov. 10, 2017 at 59.   Moscoso said that the marijuana in the car was all that they had in their possession.

{¶9}  Detective Kanavel testified that both men, when asked indicated that they did not have any drugs or guns in the room and when he asked them individually if they could check through the room for guns and drugs they consented.  T., Nov. 10, 2017 at 59.  Gomez pointed out clothing next to the door that he claimed belonged to him.  T., Nov. 10, 2017 at 89; 103; 107.  Approximately $15,000 in U.S. currency was located in a black bag that Moscoso later identified as his.  Moscoso stated that the money was used to pay MMA ["Mixed Martial Arts"] fighters.  The two men told Detective Kanavel that they had flown from California into Akron on July 10, 2017 looking for MMA fighters. T., Nov. 10, 2017 at 59-60.  The Detective, however, knew that this was not correct because they had checked into the hotel on July 8, 2017.  Moscoso also claimed that, in Akron, a woman named Amber met them and rented a car for them.

{¶10}  Detective Kanavel testified that the amount of money found concerned him, so he contacted Detective Romano of the Newark Police Department who was with CODE.  He then told the two men that Detective Romano wanted to talk to them and they said that it would not be a problem.  Neither man objected to the Detectives remaining in the room while waiting the 30 to 45 minutes that it would take for Detective Romano to arrive from Newark.

{¶11}  When Detective Romano arrived, he spoke with Moscoso and Gomez individually.  The two gave conflicting stories about how and when they traveled to Ohio.  Both men were then arrested for further investigation into the marijuana that was located in the car.  When they were asked if they wanted the Detectives to clear out all of their personal belongings and put it into bags so that they could get their $250.00 hotel deposit back and have their possessions transported to Licking County along with them, where

further investigation was to be conducted, the two men agreed and the Detectives started gathering their belongings. As they were gathering up the belongings, Detective Romano found a black duffle bag full of methamphetamine under one of the beds where Moscoso had been sitting. Detective Romano testified, "Well, the flap wasn't completely opened because it's a flap tie, but it was opened enough that I could see through the inch opening that there was stuff in it, yes, sir." (T. November 10, 2017 at 119). Detective Romano testified that through his training and experience he believed that the bag contained a large amount of methamphetamine. (Id.).

{¶12} The methamphetamine was in thirteen one-gallon size zip lock bags. When asked, he testified that the men never revoked his permission to be in the room or their consent for him to search for anything. Romano testified that in a cabinet behind a microwave, he found a Styrofoam coffee cup containing what looked like methamphetamine.

{¶13} The trial court, as memorialized in a Journal Entry filed on November 16, 2017, denied the Motion to Suppress, holding, in part, that the occupants of the hotel room gave consent to search the room and that no coercive tactics were used and "no claims of false authority made."

{¶14} On November 28, 2017, Gomez filed a brief arguing in part that the hidden compartment statue was unconstitutional. Also on that date, Gomez entered a plea of no contest to possession of drugs and trafficking in drugs and the specifications.

{¶15} During the state's explanation of circumstances, the state noted, "Inside the tire was the residue of methamphetamine." T., Nov. 28, 2017 at 30. This fact is

also part of Gomez's stipulation concerning the Hidden Compartment charge. T., Nov., 28, 2017 at 48-49. The state further noted,

> The trunk compartment where the spare tire would have been located if it would have been properly stowed, they found a baggie that matched the characteristics of the baggie found of methamphetamine that were later located in Muskingum County, Ohio.

* * *

> They discovered a traffic citation in the vehicle from Oklahoma dated July 6th of 2017 with the name Hector Gomez as the named driver of the vehicle and made contact with a Sergeant William Rankin from Oklahoma City, who indicated that at the time of the stop he had the alert of narcotics on the vehicle. He conducted a search of the vehicle, discovered no narcotics. He would testify at the time of the stop, there was no spare tire laying about in the inside of the vehicle. Instead, the spare tire was secured properly in place.

* * *

> From the person of Jose Barragan ["Buenrostro"], they recovered a mobile phone. And upon the issuance of a search warrant, later, they searched the phone. On the phone, they discovered numerous videos containing conversations of both defendants, Moscoso and Gomez, along with Barragan traveling across the United States.

* * *

The video associated with the phone extraction, which was Video No. 30, was -- it will be attached as an exhibit. On that video, the voices of Jose Barragan and Rember Moscoso can be identified speaking about methamphetamine, Heisenberg, and Mr. White, which are cultural references to Breaking Bad. It's a television series about methamphetamine production. Their destination of Ohio and the fact they already have a house there in Ohio.

They indicate that there is no good food in Ohio, only meth. And they further make reference to being able to pay for a new Camaro with two trips. Gomez's voice is heard on Video No. 30 discussing vehicles.

T., Nov. 28, 2017 at 30; 31; 32-33. Further, also during the state's explanation of circumstances, the state represented that Gomez admitted to being present in the hotel and in the vehicle. T., Nov. 28, 2017 at 34. With a few exceptions, Gomez agreed with the state's recitation of facts. T. Nov., 28, 2017 at 40-43. The trial court found Gomez guilty. T. Nov. 28, 2017 at 43-44.

{¶16} The charge of fabrication of a vehicle with a hidden compartment was tried to the bench. No testimony was taken, but rather the parties stipulated to the facts. The parties stipulated that Detective Hoskinson stopped Jose Barragan Buenrostro on July 11, 2017 for a traffic violation and found an altered tire in the cargo section of the vehicle driven by him. They stipulated that the spare tire located in the vehicle did not match the lug pattern on the vehicle and that there was "a purposeful cut ...in the outside of the discovered tire giving access to its interior. Inside the cut tire was methamphetamine residue." T., November 28, 2017 at 48. The parties also stipulated that the Detectives

discovered a plastic baggie containing marijuana in the center console of the vehicle and that a baggie was found stowed in the trunk compartment where the spare tire normally would have been.  There was a stipulation that "Detectives Hoskinson, Romano, Kanavel, and Patrick would testify that this baggie would match the type characteristics of the baggies of methamphetamine later discovered in Zanesville and for which the defendants have already pled no contest."  T., November 28, 2017 at 49.  The parties also stipulated that the phone found on Barragan contained videos containing recorded conversations between Barragan and appellant and Gomez about methamphetamine.  The trial court found Gomez guilty of the fabrication of a vehicle with a hidden compartment charge.

**{¶17}** On April 2, 2018, Gomez filed a Motion to Waive Mandatory Fine due to indigency.  The sentencing hearing took place on April 2, 2018.  The trial court ordered that for purposes of sentencing, Counts One and Two would merge.  The trial court found that Gomez would be sentenced under Count Two, and sentenced Gomez to a mandatory term of eleven years and imposed a mandatory fine of $10,000.00 and to a stated prison term of three years on Count Three.  The trial court ordered that the prison sentences be served consecutively with each other for an aggregate prison sentence of 14 years.  The trial court also ordered Gomez to pay all court costs, and to forfeit the $24,978 confiscated by the police.

**{¶18}**  A Nunc Pro Tunc sentencing entry was filed on April 12, 2018 for the sole purpose of correcting paragraph 3 of the original sentencing entry to reflect that Gomez did not plead guilty, but was found guilty by the trial court.

*Assignments of Error*

**{¶19}**  Gomez raises eight assignments of error,

{¶20} "I. THE MUSKINGUM COUNTY COMMON PLEAS COURT HAD NO JURISDICTION OVER THIS CASE.

{¶21} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION BY DENYING GOMEZ' S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION, BECAUSE GOMEZ GAVE NO VALID CONSENT TO SEARCH, BOTH WHILE HE WAS IN THE HOTEL ROOM, AND AFTER HE WAS ARRESTED.

{¶22} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION BY DENYING GOMEZ' S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION, BECAUSE GOMEZ'S ALLEGED CONSENT DID NOT EXTEND TO A WARRANTLESS SEARCH OF THE HOTEL ROOM AFTER HE WAS ARRESTED AND REMOVED FROM THE HOTEL ROOM,

{¶23} "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION BY DENYING GOMEZ' S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14,

ARTICLE I OF THE OHIO CONSTITUTION, BECAUSE THE TRAFFIC STOP DID NOT GIVE OFFICERS PROBABLE CAUSE TO SEARCH THE HOTEL ROOM, OR TO ARREST GOMEZ,

{¶24} "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION IN CONVICTING GOMEZ FOR FABRICATION OF A VEHICLE WITH A HIDDEN COMPARTMENT BECAUSE THE "FABRICATION OF A VEHICLE" STATUTE IS UNCONSTITUTIONAL PER SE AND AS APPLIED TO GOMEZ, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶25} "VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION IN CONVICTING GOMEZ FOR FABRICATION OF A VEHICLE WITH A HIDDEN COMPARTMENT BECAUSE THE CONVICTION IS BASED ON INSUFFICIENT EVIDENCE, AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶26} "VII. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION IN UNLAWFULLY ORDERING GOMEZ TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶27} "VIII. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION BY ORDERING GOMEZ TO PAY A MANDATORY FINE, AND COURT COSTS, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, IN VIOLATION OF HIS SIXTH AND EIGHTH AMENDMENT RIGHTS, AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION."

I.

{¶28} Gomez argues in his First Assignment of Error that the Muskingum County Court of Common Pleas had no jurisdiction over his case.

**STANDARD OF APPELLATE REVIEW.**

{¶29} Gomez's argument centers on an issue of law, not the discretion of the trial court. "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**ISSUE FOR APPEAL.**

***A. Whether the Muskingum County Court of Common Pleas had jurisdiction in Gomez's case.***

**{¶30}** Gomez argues that Gomez was indicted on the same or similar charges in Licking County, Ohio before the Muskingum County Grand Jury returned the Indictment in this case. Gomez contends that under the rule of judicial priority, because the charges were first filed in Licking County, the Licking County Court of Common Pleas had exclusive jurisdiction over the matter. [Appellant's Brief at 6-8]. Gomez argues that the indictment in Muskingum County is, therefore, void.

**{¶31}** At the outset, we note that this issue was not raised in the trial court. Gomez attempts to place the matter before this court by alluding to matters in his brief allegedly occurring in the Licking County case. [Appellant's Brief at 6, 7]. We note that no testimony, documents or evidence of any kind concerning proceedings in the Licking County Court of Common Pleas were entered into evidence in the Muskingum County case.

**{¶32}** In *State v. Hooks*, 92 Ohio St.3d 83, 748 N.E.2d 528 (2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *See, State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978). It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty*, 4th Dist. No. 411, 1980 WL 350992 (Feb. 28, 1980), *citing Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227 (1963).

{¶33} Nor could the trial court take judicial notice of proceedings in a separate case in a different county. In the case *In re LoDico*, this Court observed,

> A trial court may not take judicial notice of prior proceedings in the court, but may only take judicial notice of prior proceedings in the immediate case. *Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. of Revision,* (1982), 7 Ohio App. 3d 157, 159, 454 N.E. 2d 1330. *See, also, D & B Immobilization Corp. v. Dues* (1997), 122 Ohio App.3d 50, 53, 701 N.E.2d 32; *In re Knotts* (1996), 109 Ohio App.3d 267, 271, 671 N.E.2d 1357; *Woodman v. Tubbs Jones* (1995), 103 Ohio App.3d 577, 580, 660 N.E.2d 520; *State v. Velez* (1991), 72 Ohio App.3d 836, 838, 596 N.E.2d 545; *Kiester v. Ehler* (1964), 9 Ohio App.2d 52, 56, 222 N.E.2d 782; *Burke v. McKee* (1928), 30 Ohio App. 236, 238, 164 N.E. 776. The rationale for this holding is that, if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. *Dues, supra,* at 53, 701 N.E.2d 32. See, *Deli Table, Inc. v. Great Lakes Mall* (Dec. 31, 1996), Lake App. No. 95–L–012 [1996 WL 761984], at 13; *Phillips v. Rayburn* (1996), 113 Ohio App.3d 5714374, 379, 680 N.E.2d 1279.

5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172, ¶ 94, *quoting State v. Blaine*, 4th Dist. No. 03CA9, 2004-Ohio-1241, ¶ 19. In *State v. Taylor*, 135 Ohio App.3d 634, 735 N.E.2d 61(1999), the Sixth District held: "A court cannot take notice of proceedings in

separate actions even when the separate actions involve the same parties and were before the same court." Id. at 639 n. 5, 735 N.E.2d 61.

**{¶34}** Accordingly, Gomez's material and factual assertions contained in its brief in this Court concerning the Licking County case involving him may not be considered. *See, North v. Beightler*, 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶ 7, *quoting Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16.

   1). *Trial court jurisdiction*.

**{¶35}** Venue and subject matter jurisdiction are distinct legal concepts. *See State v. Bobinchuck*, 9th Dist. Summit No. 19536, 2000 WL 1287296, *1 (Sept. 13, 2000). "'Jurisdiction' means the courts' statutory or constitutional power to adjudicate the case." (Internal quotations and citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004–Ohio–1980, ¶ 11. It is only when the trial court lacks subject matter jurisdiction that its judgment is void. Id. at ¶ 12. "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." Id. at ¶ 11.

**{¶36}** The Ohio Supreme Court has recognized that the term "jurisdiction" encompasses three distinct concepts: 1) subject matter jurisdiction; 2) jurisdiction over the person; and 3) jurisdiction over the particular case. *State v. Parker*, 95 Ohio St.3d 524, 2002–Ohio–2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting), *citing State v. Swiger*, 125 Ohio App.3d 456, 462, 708 N.E.2d 1033(9th Dist.1998), *abrogated on other grounds*, 100 Ohio St.3d 176, 2003–Ohio–5607. "The third category of jurisdiction encompasses the trial court's authority to determine a specific case within that class of cases that is

within its subject matter jurisdiction.  * * * Where it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is only error in the 'exercise of jurisdiction,' as distinguished from the want of jurisdiction in the first instance."  *Swiger*, 125 Ohio App.3d at 462–463, 708 N.E.2d 1033.  When a trial court lacks subject matter jurisdiction its judgment is void; lack of jurisdiction of the particular case merely renders the judgment voidable.  Id., *citing Russell v. Russell*, 666 N.E.2d 943, 952(Ind.App.1996), *vacated on other grounds*, 682 N.E.2d 513.

**{¶37}**  Ohio common pleas courts have "original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas."  R.C. 2931.03; *State v. Mitchell*, 5th Dist. Guernsey No. 07–CA–17, 2008–Ohio–101, ¶ 32.  A common pleas court has original jurisdiction in felony cases and its jurisdiction is invoked by the return of an indictment. *Click v. Eckle*, 174 Ohio St. 88, 89, 186 N.E.2d 731 (1962).

**{¶38}** Drugs and large quantities of cash were located in a motel room in Zanesville, Muskingum County, Ohio.  The indictment in the instant case charged Gomez with several felonies alleged to have occurred in Muskingum County, Ohio.  The Muskingum County Court of Common Pleas therefore had subject-matter jurisdiction over Gomez's case.  *See, State v. Poissant*, 5th Dist. Fairfield No. 08 CA 7, 2009–Ohio–4235, ¶ 20, *appeal not allowed*, 123 Ohio St.3d 1510, 917 N.E.2d 812, 2009–Ohio–6210.  There is no evidence that Gomez has, or will be, subject to prosecution in another jurisdiction for the same offenses that he was found guilty of in Muskingum County.

{¶39} The Muskingum County Court of Common Pleas clearly had subject matter jurisdiction to consider the criminal charges filed against Gomez.

{¶40} Gomez's First Assignment of Error is overruled.

## II. & III.

{¶41} In his Second and Third Assignments of Error, Gomez argues that the trial court erred in overruling his motion to suppress.

**STANDARD OF APPELLATE REVIEW**.

{¶42} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, *supra*.

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**ISSUES FOR APPEAL**

*A. Whether the consent given by the occupants of the hotel room was freely and voluntarily given.*

*B. Whether the search of the hotel room exceeded the consent given by the occupants.*

{¶43} "A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office..." *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), *citing United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). *Accord, State v. Jones,* 124 Ohio St.3d 1203, 2009-Ohio-6188, 919 N.E.2d 739, ¶13.

{¶44} A warrantless search based upon a suspect's consent is valid if his consent is voluntarily given, and not the result of duress or coercion, either express or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 862(1973). The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth.* The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth; Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 491 N.E.2d 1129(1986).

{¶45} In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal.

Id. at 227-228. See, *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747 at ¶18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758(1984); *United States v. Drayton*, 536 U.S. 194, 205, 122 S.Ct. 2105, 2113, 153 L.Ed.2d 242(2002). Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 2052(1983) (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023(1938); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist. Stark No. 2002CA00048, 2002-Ohio-5300, ¶8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997). The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. *State v. Clelland*, 83 Ohio App.3d 474, 615 N.E.2d 276(4th Dist. 1992).

{¶46} "The following factors are generally used in Ohio to decide if a defendant's consent to search has been given voluntarily: '(1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; [and] (6) the defendant's belief that no incriminating evidence will be found.'" *State v. Mabry*, 2d Dist.

Montgomery No. 26242, 2015–Ohio–4513, ¶ 15, *quoting State v. Black*, 2d Dist. Montgomery No. 23524, 2010–Ohio–2916, ¶ 36–41.

**{¶47}** In addition, an individual may limit the scope of his consent to search, he may revoke that consent entirely. *See, e.g., United States v. Drayton*, 536 U.S. at 207, 122 S.Ct. 2105, 153 L.Ed.2d 242; *Painter v. Robertson*, 185 F.3d 557, 567(6th Cir., 1999). Of course, an item properly seized prior to the withdrawal of consent is not subject to suppression under the Fourth Amendment. *State v. Riggins*, 1st Dist. Hamilton No. C0306262, 2004-Ohio-4247.

**{¶48}** The prevailing rule among Ohio courts is that consent to a search may be limited in time, duration, area, and intensity or may revoked at any time, even after the search has begun. *See Lakewood v. Smith*, 1 Ohio St.2d 128, 130, 205 N.E.2d 388 (1965); *State v. Crawford*, 151 Ohio App.3d 784, 2003-Ohio-902, 786 N.E.2d 83 (2nd Dist.); *State v. Mack*, 118 Ohio App.3d 516, 519, 693 N.E.2d 821 (6th Dist. 1997); *State v. Rojas*, 92 Ohio App.3d 336, 635 N.E.2d 66 (8th Dist. 1997); *State v. Arrington*, 96 Ohio App.3d 375, 645 N.E.2d 96 (12th Dist. 1994).

**{¶49}** The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991), *citing Illinois v. Rodriguez*, 497 U.S. 177, 183-189, 10 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Florida v. Royer*, 460 U.S. 491, 501-502, 103 S.Ct. 1319, 1326-1327, 75 L.Ed.2d 229 (1983) (opinion of WHITE, J.); id., at 514, 103 S.Ct., at 1332 (BLACKMUN, J., dissenting).

{¶50} In the case at bar, there was testimony during the suppression hearing that Detective Kanavel knocked on the door to room 201 of the hotel at approximately 3:30 p.m. on July 11, 2017 and that Moscoso opened the door. Both Detective Kanavel and Detective Patrick were outside the door and identified who they were and Detective Kanavel testified that he asked Moscoso if he could talk with him. The detectives testified that once Moscoso consented and said for them to come on in, they went into the room, shut the door. Moscoso then asked, "Does this have anything to do with Jose [DeJesus Buenrostro], and I told him yes." T., Nov. 10, 2017 at 71. Gomez was also in the room at the time. Both men told the Detectives that they did not have any other drugs in the room or guns and when each was asked individually if they cared if the Detectives "would check through the room for guns and drugs and they stated no, it was no problem." T., Nov. 10, 2017 at 59; 134.

{¶51} Detective Kanavel testified that he saw a black bag that Moscoso identified as being his and that he located approximately $15,000 in U.S. currency in the bag. While he was searching the bag, Detective Patrick was searching Gomez's stuff on the other side of the room. Moscoso and Gomez were advised that Detective Romano with CODE wanted to talk to them further because of the money that had been located. When asked if that was a problem, they both indicted that it was not. Detective Kanavel testified that he asked if they cared if "We just hang out here with you until he gets here, they stated that it would be no problem, so we sat there in the room for probably about 40, 45 minutes watching ESPN, talking sports, and talking about the MMA fighting and that." T., Nov. 10, 2017 at 62. When he told them that it would take a half hour to 35 minutes because Detective Romano was in Licking County and that it would take a while, the two men did

not complain and were friendly.  Once Detective Romano arrived, both men agreed to be individually interviewed by him along with Detective Patrick.  At the time, no one was handcuffed and guns were not pointed at anyone.  Detective Kanavel testified that the consent to search the room for drugs and guns was started at 3:35 p.m. and that during the course of the search, both men identified what possessions in the room belonged to them.  The following is an excerpt from Detective Kanavel's testimony at the suppression hearing:

Q: Okay.  At any point when you were talking to these guys, did they revoke your permission to be in the same room?

A: No, they did not.

Q: Did they ever revoke their consent for you to be searching for anything?

A: No.

Q: Did you refresh your permission repeatedly throughout this interaction?

A: Yes.

Q: At the end when you were - - when they were being placed under arrest in the room and they were going to be taken to Licking County, and you asked to get their stuff and put it in a bag –

A: Yes.

Q: - - was it your purpose to be rooting around the room and finding drugs, or were you just trying to get their stuff in a bag and get them out of there?

A: Just gather all their stuff.

Q: So if somebody gives you permission to gather all their stuff in a hotel room so it could be taken with them, do they take that to mean clear out the hotel room of all the personal property?

A: Yes.

Q: Not just the specific bags that they have pointed out, but instead all personal property?

A: Correct.

T., Nov. 10, 2017 at 102-103.

{¶52} Based on the foregoing, we find that the trial court did not err in finding that the consent to search was "voluntary, uncoerced and valid" and that the detectives "[c]ontinually refreshed the voluntariness of the encounter, and continued to meet with complete cooperation from the Defendant [appellant] and co-defendant which cements the voluntariness of the consensual interaction of the parties."

{¶53} Neither Gomez nor Moscoso ever revoked or limited the scope of the search. T., Nov. 10, 2017 at 102. The Detectives had clear consent to gather the belongings of the two men in the hotel room so that they could get back their $250.00 deposit when the room was vacated. T., Nov. 10, 2017 at 65, 102-103. Both the cup containing drugs and the bag containing money were discovered during this "gathering." T., Nov. 10, 2017 at 65-67; 115-119.

{¶54} Gomez's Second and Third Assignments of Error are overruled.

IV.

{¶55} In his Fourth Assignment of Error, Gomez contends that the traffic stop did not give the officers probable cause to search the hotel room or arrest Gomez.

{¶56} In light of our disposition of Gomez's Second and Third Assignments of Error in which we have found the consent to search the hotel room was voluntarily given, we find Gomez's Fourth Assignment of Error to be moot.

V. & VI.

{¶57} In his Fifth Assignment of Error, Gomez argues that R.C. 2923.241 is unconstitutional per se and as applied to his case. In his Sixth Assignment of Error, Gomez contends that his conviction for fabrication of a vehicle with a hidden compartment is based on insufficient evidence.

**STANDARD OF REVIEW – CONSTITUTIONALITY OF R.C. 2923.241.**

{¶58} Gomez's argument centers on an issue of law, not the discretion of the trial court. "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty*

*Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**STANDARD OF REVIEW – MANIFEST WEIGHT.**

**{¶59}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶60}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31.

Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20, *superseded by statute on other grounds as stated in In re Z.E.N.*, 4th Dist. Scioto No. 18CA3826, 2018-Ohio-2208, ¶ 27. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision*. State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶61}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**R.C. 2923.241 Designing or operating a vehicle with a hidden compartment used to transport a controlled substance.**

**{¶62}** Gomez was convicted of designing or operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241(C). R.C. 2923.241 states, in relevant part, as follows:

(A) As used in this section:

(1) "Controlled substance" has the same meaning as in section 3719.01 of the Revised Code.

(2) "Hidden compartment" means a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure. "Hidden compartment" includes, but is not limited to, any of the following:

(a) False, altered, or modified fuel tanks;

(b) Any original factory equipment on a vehicle that has been modified to conceal, hide, or prevent the discovery of the modified equipment's contents;

(c) Any compartment, space, box, or other closed container that is added or attached to existing compartments, spaces, boxes, or closed containers integrated or attached to a vehicle.

(3) "Vehicle" has the same meaning as in section 4511.01 of the Revised Code and includes, but is not limited to, a motor vehicle, commercial tractor, trailer, noncommercial trailer, semitrailer, mobile home, recreational vehicle, or motor home.

(4) "Motor vehicle," "commercial trailer," "trailer," "noncommercial trailer," "semitrailer," "mobile home," "manufacturer," "recreational vehicle,"

and "motor home" have the same meanings as in section 4501.01 of the Revised Code.

(5) "Motor vehicle dealer" has the same meaning as in section 4517.01 of the Revised Code.

(B) No person shall knowingly design, build, construct, or fabricate a vehicle with a hidden compartment, or modify or alter any portion of a vehicle in order to create or add a hidden compartment, with the intent to facilitate the unlawful concealment or transportation of a controlled substance.

(C) No person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance.

* * *

(I) This section does not apply to a box, safe, container, or other item added to a vehicle for the purpose of securing valuables, electronics, or firearms provided that at the time of discovery the box, safe, container, or other item added to the vehicle does not contain a controlled substance or visible residue of a controlled substance.

**ISSUES FOR APPEAL.**

*A.  Whether R.C. 2923.241 is unconstitutionally vague.*

{¶63} In *Kolender v. Lawson,* the United State Supreme Court noted,

As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith, supra*, 415 U.S. at 574, 94 S.Ct., at 1247–1248. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id., at 575, 94 S.Ct., at 1248.

461 U.S. 352, 357-358, 103 S.Ct. 1855, 75 L.Ed.2d 903(1983)(footnotes omitted).

**{¶64}** R.C. 2923.241 contains clear standards for determining what a suspect has to do in order to satisfy the requirement of designing or operating a vehicle with a hidden compartment used to transport a controlled substance. The statute does not vest virtually

complete discretion in the hands of the police to determine whether the suspect has satisfied the statute. R.C. 2923.241 does not encourage arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute. The legislature has set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." *See, Grayned, supra*, 408 U.S., at 108, 92 S.Ct., at 2299; *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921).

**{¶65}** In *Eastman v. State*, 131 Ohio St. 1, the Supreme Court held:

4. A statute cannot be held invalid for uncertainty if any reasonable and practical construction can be given to its language; merely difficulty in ascertaining its meaning, or the single fact that it is susceptible of different interpretations will not necessarily render it nugatory; it is the duty of courts to endeavor by every rule of construction to ascertain the meaning of and give full force and effect to, every enactment of the General Assembly not obnoxious to constitutional prohibition.

**{¶66}** The mere fact that statutory construction or interpretation is necessary to determine whether a tire laying in the rear hatchback area of a rental car is included in the class of "hidden compartments" does not render the statute unconstitutional vague or unconstitutional due to a risk of arbitrary enforcement.

***B. Whether the trier of fact clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.***

**{¶67}** In the case at bar, there was testimony that a spare tire with a three-sided flap cut into the sidewall was located in the vehicle. It was placed inside the vehicle to

make it appear that it was the correct spare tire for the vehicle. The cut, according to the testimony, appeared to be purposeful and not the result of a non-deliberate cause. There was drug residue found inside the tire. Testimony established that Gomez admitted to being in and operating the vehicle. T., Nov. 28, 2017 at 30; 31; 32-34.

**{¶68}** A spare tire clearly falls under the original factory equipment of a vehicle even though, as noted, the spare at issue was not the actual spare from the Kia in this case. The tire would further be considered a "compartment, space, box or other closed container **added** to the [Kia]." R.C. 2923.241(A)(1)(c) (emphasis added). The spare tire to the vehicle in question was removed and replaced with the spare tire that was found in the vehicle. As noted by the state, "[t]he cut located on the underside of the spare tire in the vehicle was consistent with the creation of a hidden compartment under the statute." The trial court, at the conclusion of the bench trial, stated on the record, in relevant part, as follows:

THE COURT: The Court does find that the tire specifically is - - does provide a hidden compartment and is the hidden compartment as stated in 2923.241 (2) and (B) says any original factory equipment on the vehicle that has been modified to conceal, hide, or prevent the discovery of modified equipment's contents. Clearly, the methamphetamine or drugs were placed inside that they modified with the slices, it was intended to hide the drugs inside.

Because the tire was sitting on top of the spare tire area doesn't mean that tire wasn't designed - - that tire still was designed to conceal the drugs.

And based upon that, I find you guilty of Count 3 also.

T., Nov. 28, 2017 at 80.

**{¶69}** No testimony or other evidence was presented that the tire was added to a vehicle for the purpose of securing valuables, electronics, or firearms.

**{¶70}** Based on the foregoing, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Gomez knowingly operated, possessed, or used a vehicle with a hidden compartment with knowledge that the hidden compartment was used or intended to be used to facilitate that unlawful concealment or transportation of a controlled substance.

**{¶71}** Gomez's Fifth and Sixth Assignments of Error are overruled.

VII.

**{¶72}** Gomez, in his Seventh Assignment of Error, argues that the trial court erred in sentencing him to consecutive sentences in contravention of R.C. 2929.14(C)(4). Gomez specifically contends that the record does not support consecutive sentences.

**STANDARD OF APPELLATE REVIEW.**

**{¶73}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that *either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.* *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

**{¶74}** Accordingly, pursuant to *Marcum* this Court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, *or* (2) the sentence is otherwise contrary to law.

**{¶75}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, 161 Ohio St. at 477 120 N.E.2d 118.

**ISSUE FOR APPEAL.**

*A. Whether the trial court properly imposed consecutive sentences in Gomez's case.*

**R.C. 2929.14 (C)(4) Consecutive Sentences.**

**{¶76}** R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences. In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶77} R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶78} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not

disproportionate to the offender's conduct and to the danger the offender poses to the public.  Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

**{¶79}**  In *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, syllabus, the Supreme Court of Ohio stated that:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

**{¶80}**  Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute."  *Bonnell*, ¶29.  "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."  Id.  A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law.  *Bonnell,* ¶34.  The findings required by R.C.

2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry. Id. at the syllabus. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court. *Bonnell,* ¶30.

{¶81} In this case, the record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶82} The trial court made this finding. T., Apr. 2, 2018 at 10.

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶83} This provision does not apply to Gomez's case.

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison**

**term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

**{¶84}** The trial court made this finding. T., Apr. 2, 2018 at 10.

**R.C. 2929.14(C)(4)(c): The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

**{¶85}** The trial court made this finding. T., Apr. 2, 2018 at 9-10.

***R.C. 2929.11 and R.C. 2929.12.***

**{¶86}** The *Marcum* court further noted,

We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence *that is not clearly and convincingly contrary to law* only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

146 Ohio St.3d at ¶23, 2016–Ohio–1002, 59 N.E.3d 1231 (emphasis added).

**{¶87}** R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes.

Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

**{¶88}** R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

**{¶89}** In *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the court discussed the effect of *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and ¶11, *citing Foster* at ¶100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823.

**{¶90}** "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶13, *see also State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1; *State v. Firouzmandi supra* at ¶ 29.

{¶91} Thus, post-*Foster*, "there is no mandate for judicial fact-finding in the general guidance statutes.  The court is merely to 'consider' the statutory factors."  *Foster* at ¶ 42.  *State v. Rutter*, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; *State v. Delong*, 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8.  Therefore, post-*Foster,* trial courts are still required to consider the general guidance factors in their sentencing decisions.

{¶92}  There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them.  *State v. Polick*, 101 Ohio App.3d 428, 431(4th Dist. 1995); *State v. Gant,* 7th Dist. No. 04 MA 252, 2006-Ohio-1469, at ¶60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94(1992); *State v. Hughes,* 6th Dist. No. WD-05-024, 2005-Ohio-6405, ¶10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods,* 5th Dist. No. 05 CA 46, 2006-Ohio-1342, ¶19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors").  (Citations omitted).

{¶93}  In the case at bar, the trial court noted, that Gomez was found with four pounds of methamphetamine.  T. Apr. 2, 2018 at 8.  The court had the benefit of a pre-sentence report.  T. Apr. 2, 2018 at 8.  The trial court further noted Gomez came to Muskingum County to sell drugs.  T. Apr. 2, 2018 at 8-9.

{¶94}  Accordingly, the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when

determining an appropriate sentence.  [R.C. 2929.12].  The trial court has no obligation to state reasons to support its findings.  Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record.

{¶95}  Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes.  The sentence was within the statutory sentencing range.  We also find that the record in the case at bar supports the trial court's findings under R.C.  2929.14(C)(4).  Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code and advised Gomez regarding post-release control.  While Gomez may disagree with the weight given to these factors by the trial judge, Gomez's sentence was within the applicable statutory range  and therefore, we have no basis for concluding that it is contrary to law.

{¶96}  Gomez has failed to clearly and convincingly show that the trial court failed to consider the principles of felony sentencing, or that the aggregate sentence is otherwise contrary to law.

{¶97}  Gomez's Seventh Assignment of Error is overruled.

VIII.

{¶98}  Gomez, in his Eight Assignment of Error, challenges the trial court's imposition of a mandatory fine of $10,000.00 and court costs on him with respect to County Two, a felony of the first degree.  Specifically, Gomez claims that the trial court did not consider appellant's indigent status.

**STANDARD OF APPELLATE REVIEW.**

**{¶99}** The decision to impose or waive a fine rests within the sound discretion of the court and will not be reversed on appeal absent an abuse of that discretion. *State v. Gipson*, 80 Ohio St.3d 626, 634, 1998-Ohio-626, 687 N.E.2d 750. An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

**ISSUE FOR APPEAL.**

***A. Whether the trial court abused its discretion by imposing a mandatory fine and court costs.***

**{¶100}** R.C. 2929.18 governs the imposition of financial sanctions as a part of sentencing in felony cases. Specifically, R.C. 2929.18(A) (3) (a) permits the imposition of a fine not more than twenty thousand dollars for a felony of the first degree. Prior to imposing such a financial sanction, the court must consider, "the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B) (5).

**{¶101}** In *State v. Webb*, 5th Dist. Richland No. 14–CA–85, 2015–Ohio–3318, 2015 WL 4899511, this Court held:

> Further, Ohio law does not prohibit a court from imposing a fine on an "indigent" defendant. That is, the filing of an affidavit of indigency does not automatically entitle a defendant to a waiver of a mandatory fine. *State*

*v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013–Ohio–1662 [2013 WL 1791391], ¶ 36. Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In making its indigency determination, the court must consider both the offender's present and future ability to pay the fine. R.C. § 2929.19(B)(5).

Additionally, the trial court need not make an "affirmative finding that an offender is able to pay a mandatory fine." Id. at 635 [687 N.E.2d 750]. Instead, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." Id. We review the trial court's decision to impose a fine on an indigent defendant for an abuse of discretion. *State v. Ficklin*, 8th Dist. Cuyahoga No. 99191, 2013–Ohio–3002 [2013 WL 3583030], ¶ 5.

5th Dist. Richland No. 14–CA–85, 2015–Ohio–3318, ¶23-¶24.

**{¶102}** Upon review of Gomez's affidavit of indigency, the same does not provide sufficient information to support a finding of indigency with respect to the mandatory fine or court costs. The affidavit provides no information about assets, income or earnings. The trial court found Gomez not to be indigent with respect to fines and court costs. T., Apr. 2, 2018 at 11-12.

**{¶103}** The General Assembly amended R.C. 2947.23 by adding the following provision, "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the

costs of prosecution * * * at the time of sentencing or at any time thereafter." In *State v. Beasley*, Oh. Sup. Ct. Case No. 2014-0313, 2018-Ohio-493, the Ohio Supreme Court noted that in light of this new provision, a case does not need to be remanded to the trial court in order for the defendant to obtain an order waiving, suspending, or modifying costs. Id. at ¶ 264 –265.

{¶104} Under these circumstances, we find the trial court did not abuse its discretion in imposing the mandatory fine and/or court costs in this matter. See *State v. Harris*, 5th Dist. Muskingum No. CT2018-0005, 2018-Ohio-2257, 2018 WL 2947948, ¶¶ 37-42.

{¶105} Gomez's Eight Assignment of Error is overruled.

{¶106} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Wise, J., concur;

Hoffman, J., concurs

separately

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

WSG:clw 0125

*Hoffman, J., concurring*

**{¶107}** I fully concur in the majority's analysis and disposition of Appellant's first, second, third, fourth, fifth, seventh, and eighth assignments of error.

**{¶108}** I further concur in the majority's disposition of Appellant's sixth assignment of error. However, I disagree the spare tire at issue qualifies as a "hidden compartment" under R.C. 2923.241(A)(2)(b).

**{¶109}** The majority finds, "A spare tire clearly falls under the original factory equipment **of** a vehicle even though, as noted, the spare at issue was not the actual spare from the Kia in this case." (Maj. Op. at ¶68, emphasis added).

**{¶110}** While the spare tire may or may not have been original factory equipment of a vehicle,[3] it seems equally clear it was not original factory equipment **on** the Kia.

**{¶111}** I do agree with the majority the spare tire does meet the definition in R.C. 2923.241(A)(2)(c) because it is a "compartment, space, box or other closed container **added** to the [Kia]." (Maj. Op. at ¶68, emphasis in original). While read in its entirety, I believe the focus of subsection (c) is on a closed container attached or otherwise integrated into the vehicle, the use by the legislature of the word "added" broadens the reach of the statute beyond the alteration or modification of the vehicle and beyond the mere attachment or integration of the closed container to the vehicle.

**{¶112}** However, I submit the focus or intent the legislature had in enacting subsection (c) is somewhat academic in this case given the even broader definition of "hidden compartment" found in R.C. 2923.241(A)(2), which reads:

---

[3] The spare tire may not have been original factory equipment of any vehicle. It may have been purchased separately from a tire manufacturer rather than the manufacture of the vehicle.

"Hidden compartment" means a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure. "Hidden compartment" includes, **but is not limited to,** any of the following, * * * (Emphasis added).

**{¶113}** Accordingly, as long as the spare tire meets the broader definition of "hidden container" as set forth above, it need not meet the listed examples set forth in R.C. 2923.241(A)(2)(a), (b), or (c).

**{¶114}** The violation occurs under R.C. 2923.241(C) when a person knowing operates, possesses, or uses a vehicle with a hidden compartment. Because Appellant herein possessed or used the Kia with a hidden compartment, the evidence supports Appellant's conviction on this charge.

**{¶115}** I hasten to note such interpretation may go far beyond what the legislature envisioned or originally intended by enactment of the statute. I submit transportation of drugs in any container which conceals, hides, or otherwise prevents the discovery of drugs placed therein and then placed it in the vehicle results in a violation of the statute. This would include drugs placed in any opaque container; for example, a cooler or a purse if placed anywhere in the vehicle. Perhaps further case law will limit such expansive interpretation of the statue if the legislature chooses not to do so itself.

_____
HON. WILLIAM B. HOFFMAN